Warren CHAILLE, Dorris Warren Stewart, Elizabeth Warren Guthrie, David L. Warren, Jr., and Ella Warren Henslee, Plaintiffs/Appellees,

v.

Max H. WARREN, Sr., Max H. Warren, Jr., Edward R. Warren, John L. Warren, Patty Henslee Anderson, Eloise Henslee Corwin, Martha Warren Dowling, and Guy M. Warren, Defendants,

and

Vallie Dee Warren Johnson and Christine Warren Collier, Defendants/Appellants,

Federal Land Bank, Intervenor.

Court of Appeals of Tennessee, Middle Section at Nashville.

Jan. 15, 1985.

Rehearing Granted Feb. 7, 1985.

Application for Permission to Appeal Denied by Supreme Court April 22, 1985.

Claude Callicott, Mark H. Collier, Nashville, for defendants/appellants.

Charles N. Griffith, Waverly, for plaintiffs/appellees.

## OPINION

KOCH, Judge.

This appeal involves a dispute over the award of attorneys fees to counsel representing various children and grandchildren of Henry E. Warren whose will, executed in December, 1896 and probated in March, 1897, was the subject of a four year controversy over its meaning. The payment of these attorneys fees comes from the proceeds of the court-ordered sale of certain real property that was the subject of Mr. Warren's will. While the dispute over the intention of the testator has abated, the dispute among counsel over their respective fees continues. In their prolixity, the legal theories and pleadings of counsel in this suit rival those of the endlessly contesting scriveners in the case of *Jarndyce and Jarndyce*, the subject of Charles Dickens' *Bleak House*.

Following the remand by this Court pursuant to its opinion in *Chaille v. Warren*, 635 S.W.2d 700 (Tenn.App.1982),[1] the Chancery Court for Humphreys County entered an order on August 11, 1982, affirming its earlier decisions of August 18, 1980 and August 3, 1981, relating to attorneys fees. Thereafter, on February 21, 1984, the trial court entered a final order awarding counsel for certain heirs an additional $1,800 in attorneys fees and counsel representing other heirs an additional $1,200. The two attorneys receiving the additional joint award of $1,200 have perfected this appeal. For the reasons stated herein, we affirm the decision of the trial court.

Mr. Henry E. Warren and his wife, Lula, had six children.[2] He executed a will in December, 1896, and died shortly thereafter. The will was admitted to probate at the March, 1897 term of the Humphreys County Court. Lula Warren died intestate in September, 1941. The family home place was then occupied by various members of the Warren family, principally their son, Guy M. Warren. Guy M. Warren made various repairs and improvements to the home place. There was also proof that Warren Chaille, one of Henry Warren's grandchildren, paid property taxes on this property for five years from 1973 through 1977.

This dispute arose when two of Henry Warren's grandchildren, the sisters Vallie Dee Warren Johnson and Christine Warren Collier, who are the nominal appellants in this case, attempted to purchase all of Henry Warren's real property from his other heirs for $37,500. To this end, in June, 1976, Mrs. Johnson and Mrs. Collier attempted unsuccessfully to obtain the signature of all remaining heirs on a written contract.[3]

On August 8, 1977, two of Henry Warren's children,[4] and four of his grandchildren[5] filed this action seeking a judicial construction of Henry E. Warren's will. Named as defendants were Henry Warren's other surviving son, Guy M. Warren, and eight of his grandchildren[6] including

---

1. The Tennessee Supreme Court denied certain heirs' application for permission to appeal from this Court's decision on July 12, 1982.

2. Lula Ethel Warren Chaille died leaving her son, Floyd Warren Chaille, as sole heir. John L. Warren died with no children. David L. Warren died in 1952 leaving four children: Elizabeth Warren Guthrie, David L. Warren, Jr., Dorris Warren Stewart, and Florence Warren. Max H. Warren survives and has four children. Ella Warren Henslee survives and has two children. Guy M. Warren died while this action was pending leaving two children Vallie Dee Warren Johnson and Christine Warren Collier.

3. Mrs. Johnson and Mrs. Collier, the buyers, were successful in obtaining the agreement of their father, Guy M. Warren, and his wife. They also obtained the agreement of Warren

Chaille and his wife. They could not obtain an agreement from Max H. Warren and Ella Warren Henslee. They did not attempt to obtain an agreement from the surviving children of David L. Warren. In an order dated August 18, 1980, the trial court found that this contract was of no force and effect because its terms and conditions were never met.

4. Ella Warren Henslee and Max H. Warren. Max H. Warren later became a defendant.

5. Warren Chaille (the only son of Lula Ethel Warren Chaille) and David Warren, Jr., Dorris Warren Stewart, and Elizabeth Warren Guthrie (three of David L. Warren's four children).

6. Patty Henslee Anderson and Eloise Henslee Corwin (the daughters of plaintiff Ella Warren

the two grandchildren who had attempted to purchase all of Henry Warren's property. The plaintiffs in this action were represented by Charles N. Griffith of Waverly while the defendants were represented jointly by Claude Callicott of Nashville and Mark H. Collier of Dickson.[7]

Alleging that the property had fallen into a state of disrepair, the original action sought the permission of the court to sell the property. The complaint alleged that Mr. Warren's will either vested fee simple title of all property in Lula Warren or, in the alternative, awarded Lula Warren a life estate and vested a fee simple remainder in his children.

In answer to this complaint, Guy M. Warren and his two daughters, Vallie Dee Warren Johnson and Christine Warren Collier, who were attempting to purchase all of Henry E. Warren's remaining real property, alleged that Mr. Warren's will vested a life estate in his wife and living children and vested a fee simple remainder in his grandchildren. While these parties agreed that the trial court should order the sale of the property, their sole purpose was to persuade the trial court to compel their relatives to sell the property to them for $37,500. The other children and grandchildren named as defendants took no continuing interest in this litigation.

In an opinion and order entered on January 26, 1979, and February 13, 1979, respectively, the trial court found that the effect of Mr. Warren's will was to vest a life estate in each of Mr. Warren's surviving children with a fee simple remainder in his grandchildren *per stirpes*. The trial court's order also permitted the sale of the property by the consent of all the children and grandchildren or by a judicially ordered sale should the trial court determine later that such sale was necessary.

On November 8, 1979, the trial court entered an order directing that a portion of Henry Warren's real property be sold and the proceeds be distributed in accordance with its February 13, 1979 order.[8] The master submitted a report of sale on March 11, 1980, reporting that the property had been sold for $75,000 to three purchasers who were not members of the Warren family. On March 25, 1980, Guy M. Warren and his two daughters, represented still by the husband of one of the daughters and another counsel, moved to confirm the master's report and requested "reasonable fees to all attorneys in this case" to be paid out of the proceeds of the sale.

Counsel for the plaintiffs then prepared a proposed order confirming this sale wherein counsel for the plaintiffs was awarded $5,500 in attorneys fees and counsel for the appellants were awarded a joint fee of $1,500. Counsel for the appellants vigorously opposed this order on the basis that it was "wholly inadequate" and that their services were of as much value as those of counsel for the plaintiffs. Stating that they had no objection to counsel for the plaintiff "being paid and paid well," the two counsel for the appellants demanded a fee equal to that received by plaintiff's counsel.

The trial court entered an order confirming these sales on April 25, 1980, wherein it reserved making a final decision with regard to attorneys fees. On August 18, 1980, the trial judge entered an order directing that Henry E. Warren's remaining property be sold. On the same day, he entered an order providing that the total amount of funds from the first sale to be used for attorneys fees would be $7,500. He apportioned this by awarding $4,500 to counsel for the plaintiffs and $3,000 to counsel for the appellants. Appellants' counsel excepted to this award.

On September 12, 1980, counsel for the plaintiffs moved the trial court to reconsider its action with regard to reducing his attorneys fees from $6,000 to $4,500. Counsel sought the trial court to

[A]mend its order of counsel fees for parties counsel to provide adequately for the work required of plaintiffs' counsel in continuing to work for the disposition of this case despite the delays and objections to hearing, orders, sale, award of fees, payment of heirs shares, entry of

---

Henslee); Max H. Warren, Jr., Ray Warren, Jack Warren, and Martha Warren (the four children of Max H. Warren, Sr.); and Vallie Dee Warren Johnson and Christine Warren Collier, the prospective purchasers who were the children of defendant Guy M. Warren.

7. Mr. Collier is married to one of the parties, Christine Warren Collier.

8. This order was subsequently amended on November 27, 1979. However, this amendment is not relevant to this opinion.

this Court's orders and frustration generally by Defendants' counsel in all stages of this lawsuit as to its orderly and timely progress.

The trial court denied counsel's motion to reconsider on November 14, 1980, but directed that no attorneys fees should be paid because of the possibility that this would be an issue on appeal. This order also provided for the disbursement of certain proceeds from the first sale of this property.[9]

On January 19, 1981, the special commissioner filed a report that Henry Warren's remaining realty had been sold for $26,500 in accordance with the trial court's previous order. On February 13, 1981, the plaintiffs moved the trial court to set aside this sale and to order a new sale because one of the appellants' counsel—the husband of one of the grandchildren—had disrupted the courthouse sale by appearing and warning prospective purchasers that they would not receive good title to the property. On March 20, 1981, the trial court entered an order directing that the sale of the property be held open for an additional period of time and that new advertisements be made. There being no other interest in this property, the trial court entered an order on April 20, 1981, confirming the second sale for $26,500. Again, the trial court reserved ruling upon disbursing attorneys fees from the proceeds of this sale. Counsel for the appellants disagreed with this order.

In an order entered on August 3, 1981, the trial court awarded counsel for the plaintiffs an additional $1,800 in attorneys fees and the two counsel representing the appellants an additional $1,000.

Counsel for the appellants filed their notice of appeal on September 2, 1981 wherein they stated, in part:

> Said parties especially appeal from all Orders of the Court which fixed and allowed attorney fees for their attorneys, Mark H. Collier and Claude Callicott, in amounts less than those awarded to the attorney for the Plaintiffs.

In their briefs filed in this Court in 1982, counsel for the appellants contended that the trial court had erred in construing Henry E. Warren's will and that the effect of the will was to give a life estate to his widow, then a life estate to his children and vested the remainder in his grandchildren *per stirpes*.[10] Counsel also took issue with the award of attorneys fees and for the first time requested additional fees for their work performed in perfecting this appeal.

In *Chaille v. Warren*, 635 S.W.2d 700 (Tenn.App.1982), this Court disagreed with the trial court and with the appellants and held that Henry E. Warren's will gave a life estate to his wife and that there was a partial intestacy as to the real property so that at the death of Lula Warren, the property descended as if there had been no will. Thus, this Court ruled that a one-sixth, undivided interest in the fee of Henry E. Warren's real property vested in each of his children at the time of his death subject to their mother's life estate. *Chaille v. Warren*, 635 S.W.2d 700, 702 (Tenn.App. 1982).

With specific regard to attorneys fees, this Court affirmed the trial court's awards of attorneys fees contained in its orders of August 18, 1980 and August 3, 1981. With specific regard to the appellants' counsel's request for attorneys fees on appeal, this Court ruled:

> Defendants do insist that they are entitled to attorneys fees for their services regarding this appeal. We are of the opinion that, on remand, the Chancellor should consider whether additional attorneys fees should be awarded to defendants' attorneys for their services regarding this appeal and, if so, the amount of such fee. *Chaille v. Warren*, 635 S.W.2d 700, 703 (Tenn.App.1982).

Dissatisfied with the decision of this Court, counsel for the appellants filed an application for permission to appeal pursuant to Tenn.R.App.P. 11 in the Tennessee Supreme Court. Again the appellants contended that Mr. Warren's will vested a life estate in his widow and children with a fee simple remainder in his grandchildren. They also contended that the trial court's award of attorneys fees was in error and that this court had refused, improperly, to

---

9. The husband of one of the grandchildren, as counsel for the appellants, filed exceptions to this order on November 25, 1980, even though it had been prepared and approved by his co-counsel and counsel for the plaintiffs.

10. See "Brief of Vallie Dee Warren and Christine Warren Collier, Defendants-Appellants," filed on January 4, 1982, in the Court of Appeals in *Warren Chaille, et al. v. Max H. Warren, Sr., et al.*, Appeal No. 81–288–II, at pp. 1–2.

award additional attorneys fees for their work in perfecting these appeals.[11]

The Tennessee Supreme Court declined to review this Court's decision.

Upon the remand, counsel for the plaintiffs sought additional attorneys fees for the work he performed on appeal. In support of his request for an additional $2,000 in fees, counsel for the plaintiff submitted his own affidavit as well as an affidavit of independent counsel stating that the value of his services was $3,000 at a minimum.

In support of their request for an additional $1,500 for each counsel, counsel representing the appellants filed their affidavit concerning their work on appeal as well as affidavits of two independent lawyers to the effect that the value of these services was $3,000 at a minimum.

In an order entered on August 11, 1982, the trial court affirmed its earlier awards of attorneys fees that had been upheld by this Court and directed that all proceeds from the sale of the Warren property be disbursed except for $5,000 which would be retained for additional attorneys fees. While it did not finally decide the issue of attorneys fees, the trial court's order stated:

> The prayer or request in plaintiffs' motion for the allowance to the plaintiffs' attorney of an additional fee for his services rendered on appeal is beyond the scope of the remand and is accordingly denied.

Eighteen months later, the trial court, apparently having reconsidered its decision to deny additional fees to counsel for the plaintiffs, filed a memorandum opinion on January 25, 1984, awarding counsel for the plaintiffs an additional fee of $1,800 and the two counsel for the appellants an additional joint fee of $1,200. An order incorporating this memorandum was entered on February 21, 1984. Counsel for the appellants filed lengthy exceptions to this decision and have duly perfected this appeal.

While somewhat obtuse, the brief submitted on behalf of the defendants-appellants appears to raise four matters for this Court's consideration: (1) whether counsel for the plaintiff is estopped to claim additional attorneys fees on remand having not

requested such fees prior to the appeal; (2) whether the chancellor went beyond the scope of the remand order of this Court by awarding additional attorneys fees to counsel for the plaintiff; (3) whether the trial court erred by changing its mind between its order entered on August 11, 1982, and its final order entered on February 21, 1984, with regard to the payment of additional fees to plaintiffs' counsel; and (4) whether the trial court, in deciding upon attorneys fees, erred by considering whether the attorneys' work benefited the estate involved and which party prevailed on appeal.

## I.

### Estoppel of Plaintiffs' Counsel to Request Attorneys Fees for Services Performed on Appeal

We find no merit in appellants' contention that counsel for the plaintiffs is estopped to claim additional attorneys fees for the services he performed on the first appeal from the trial court's construction of Mr. Warren's will, the sale of his property, and the disbursement of the proceeds to his heirs. It would have been premature to request these fees prior to the appeal, see *Evans v. Evans*, 558 S.W.2d 851, 854 (Tenn.App.1977), thus, the only proper time to request fees for legal services performed on appeal would be on the remand of the case. See *Folk v. Folk*, 210 Tenn. 367, 379, 357 S.W.2d 828, 828–29 (1962) and *Salisbury v. Salisbury*, 657 S.W.2d 761, 771 (Tenn.App.1983). Counsel for the plaintiffs cannot be faulted for making his request for attorneys fees at the proper time.

## II.

### Adherence by the Trial Court to the Court of Appeals' Remand Order

The appellants next contend that the trial court improperly went beyond the scope of this Court's remand order contained in *Chaille v. Warren*, 635 S.W.2d 700 (Tenn.App.1982) by awarding attorneys fees to counsel for the plaintiffs. This

---

11. See "Application of Defendants-Appellants for Permission to Appeal Under Rule 11 of the Rules of Appellate Procedure," filed on May 11, 1982, in the Tennessee Supreme Court in *Warren Chaille, et al. v. Max H. Warren, Sr., et al.,* Appeal No. 81–288–II, at pp. 1 and 28–30.

argument is untenable for two reasons. First, it ignores the fact that the proper time and place to request attorneys fees for services performed on appeal is on remand in the trial court. See *Folk v. Folk,* 210 Tenn. 367, 379, 357 S.W.2d 828–29 (1962). Second, it fails to recognize that the issue of plaintiffs' counsel's entitlement to attorneys fees for services performed on the first appeal was not addressed by this Court in *Chaille v. Warren,* 635 S.W.2d 700 (Tenn.App.1982) because it was not an issue, and, therefore, was not part of the first appeal in this case.

■ Upon the remand ordered by this Court, the trial court, pursuant to Tenn. Code Ann. § 29–27–121, had the jurisdiction to make proper awards of attorneys fees from the proceeds of the sale of Mr. Warren's property. We cannot find fault with the trial judge's exercise of the discretion vested in him by statute.

### III.

#### The Trial Court's Change of Opinion

■ The appellants also claim that the trial court somehow committed reversible error because between the time it entered its orders of August 11, 1982, and February 21, 1984, it changed its mind and decided that it could award additional attorneys fees to counsel for the plaintiffs for the work he performed on appeal. We also find this argument untenable.

It is clear that the trial court's order of August 11, 1982, was not a final order because it did not adjudicate all the claims pending before the Court. Tenn.R.App.P. 3(a) provides, in part:

[A]ny order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revision at any time before entry of a final judgment adjudicating all the claims, rights, and liabilities of all parties.

From this rule, it is clear that the trial court was acting within its authority when it finally determined that counsel for the plaintiffs could receive additional attorneys fees for the work he performed on appeal.

### IV.

#### The Award of Attorneys Fees

■ The appellants also contend that the trial court erred in the criteria it employed to determine the amount of attorneys fees to be awarded to respective counsel for their work during the first appeal. Particularly, they take issue with the trial court's consideration of whether the work benefited the estate and which legal position prevailed on appeal. Relying upon *Montgomery v. Hoskins,* 222 Tenn. 45, 432 S.W.2d 654 (1968), counsel for the appellants insist that they are entitled to a fee equal to that received by plaintiffs' counsel. We do not agree with this contention. It is based upon a clear misreading of the Tennessee Supreme Court's opinion in *Montgomery v. Hoskins,* 222 Tenn. 45, 432 S.W.2d 654 (1968). Even in that case, counsel for the respective parties did not receive identical fees.[12]

While holding that Tenn.Code Ann. § 29–27–121 [formerly Tenn.Code Ann. § 23–2125] required the trial court to award attorneys fees to counsel for both litigants in a partition case where each litigant had rights in the property entitled to be defended, the Tennessee Supreme Court held that

[T]he attorney who represents one party is as much entitled to a fee fixed on the basis of those principles applying generally to the fixing of fees as the attorney for another party. *Montgomery v. Hoskins,* 222 Tenn. 45, 48, 432 S.W.2d 654, 655 (1968).

The Tennessee Supreme Court has discussed the factors that trial courts can consider in awarding attorneys fees. See *Connors v. Connors,* 594 S.W.2d 672, 676 (Tenn.1980). The Supreme Court has specifically approved the trial court's consideration of the necessity of the appeal. *Folk v. Folk,* 210 Tenn. 367, 379, 357 S.W.2d 828, 829 (1962), which party prevailed on appeal, *Gilpin v. Burrage,* 188 Tenn. 80, 91, 216 S.W.2d 732, 737 (1948), and whether the work performed by the attorney requesting a fee benefited the estate or was primarily for a litigant's benefit. *First American National Bank v. Charlton,* 557 S.W.2d 500, 501 (Tenn.1977) and *Vaccaro v. Cical-*

---

12. In *Montgomery v. Hoskins,* 222 Tenn. 45, 432 S.W.2d 654 (1968), counsel for the successful plaintiffs received a fee of $1,000 while counsel for the defendants received $500 even though the defendants had an interest in the property equal to that of the plaintiffs.

*la,* 89 Tenn. 63, 78, 14 S.W. 43, 46–47 (1890).

■ The award of attorneys fees in cases like this one is left largely to the discretion of the trial court. *Scott v. Marley,* 124 Tenn. 388, 413, 137 S.W. 492, 498 (1911) and *Chaille v. Warren,* 635 S.W.2d 700, 703 (Tenn.App.1982). Upon our review of this record, we conclude that the trial court's decision to award counsel for the plaintiffs an additional $1,800 as attorneys fees for the services he performed on appeal and to award both counsel for the appellants $1,200 for their services on appeal is fully supported by this record.

## V.

### *Counsel's Renewed Request for Attorneys Fees*

Finally, counsel for the appellants request that this Court award them additional attorneys fees for the services they have rendered on this appeal. They specifically request that these funds be paid from the $1,800 fee the trial court awarded to counsel for the plaintiffs.

■ As this Court held in *Chaille v. Warren,* 635 S.W.2d 700, 703 (Tenn.App. 1982), the trial court is the proper forum for the determination of whether attorneys fees should be awarded and their amount. *Folk v. Folk,* 210 Tenn. 367, 379, 357 S.W.2d 828, 828–29 (1962). Thus, upon remand, the trial court should consider whether counsel should be awarded fees for this appeal to be paid out of the funds still held by the trial court resulting from the sale of the Warren property. We note in this regard, however, that the test adopted by the Tennessee Supreme Court to determine whether fees should be paid out of an estate requires a determination of whether the legal services performed for which payment from the estate is sought inured to the benefit of the estate itself or to the individuals claiming an interest in the estate. *Leaver v. McBride,* 506 S.W.2d 141, 145 (Tenn.1974) and *Pierce v. Tharp,* 224 Tenn. 328, 338, 455 S.W.2d 145, 149 (1970), *reh. denied,* 224 Tenn. 328, 457 S.W.2d 529, *reh. denied,* 224 Tenn. 328, 461

S.W.2d 950, *cert. denied,* 402 U.S. 929, 91 S.Ct. 1527, 28 L.Ed.2d 863 (1971). While it is not without some question whether the services of counsel for the appellants in the trial court inured to the benefit of the estate or were for the benefit of only the appellants themselves, it appears that the labor of all counsel on this appeal has been for the sole purpose of obtaining their fee. This would not seem to be of any benefit to Henry E. Warren's estate or will, and thus, it would appear that this is not the proper case wherein the estate, rather than the litigants, should bear these additional costs.

For the reasons stated herein, the judgment of the trial court is affirmed, and the case is remanded to the trial court. The costs in this cause are not taxed against the proceeds of the sale of Henry E. Warren's real property in the hands of the Clerk and Master of Humphreys County, rather they are taxed against the defendants-appellants and their sureties for which execution, if necessary, may issue.

TODD, P.J., M.S., and LEWIS, J., concur.

### OPINION ON PETITION TO REHEAR

KOCH, Judge.

The appellants, Vallie Dee Warren Johnson and Christine Warren Collier, have filed a petition to rehear requesting this Court first, to clarify its opinion filed on January 15, 1985, 689 S.W.2d 173, with regard to the taxation of court costs and second, to tax the costs of the appeal against the proceeds of the sale of certain real property belonging to the estate of Henry E. Warren and presently in the hands of the Clerk and Master of the Chancery Court for Humphreys County, Tennessee.

■ The opinion filed by this Court on January 15, 1985, at page 181 provided: The costs in this cause are not taxed against the proceeds of the sale of Henry E. Warren's real property in the hands of the Clerk and Master of Humphreys County, rather they are taxed against the defendants-appellants and their sureties for which execution, if necessary, may issue.

Acting upon the assumption that the clerk and master has already paid the court costs of the proceedings in the trial court occurring after the remand by this Court from the funds of the estate, and with proper deference to the orders regarding the payment of costs entered earlier by the trial court and by this Court, the opinion on this appeal was never meant to be construed as doing anything more than taxing the costs of the present appeal to the defendants-appellants and their sureties rather than the estate's funds being held by the clerk and master.

To the extent that this petition to rehear again requests that the costs of the second appeal be paid out of the estate's funds being held by the clerk and master, the petition is respectfully denied since it presents no new matter that has not already been considered fully by this Court.

TODD, P.J., and LEWIS, J., concur.