IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 18, 2003 Session

**ETHEL CARMICAL, ET AL.**
**v.**
**MARY JANE KILPATRICK, ET AL.**

**An Appeal from the Chancery Court for Perry County**
**No. 3926    Timothy L. Easter, Judge**

_____

**No. M2002-00613-COA-R3-CV - Filed September 11, 2003**

_____

This is a challenge to an award of attorney's fees in a partition action. The testatrix left 500 acres of land in Perry County to her then-living heirs. Some of the heirs filed this action to partition and sell the land. After several years, the land finally sold. The trial court awarded 10% of the sale proceeds, approximately $100,000, as attorney's fees for the three attorneys who provided legal services in the partition action. One of the heirs now appeals that award, claiming that it was excessive. The appellant filed neither a transcript of the proceedings nor a statement of the evidence pursuant to Tennessee Rule of Appellate Procedure 24(c). We must affirm the trial court's award, because the issues raised by the appellant would require a review of the proceedings below, and without a transcript of the trial proceedings or a statement of the evidence, we must assume that the trial court properly exercised its discretion in light of the evidence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

John P. Cauley, Franklin, Tennessee, for the appellant, Mary Jane Kilpatrick.

Tommy E. Doyle, Linden, Tennessee, for the appellee, Ruth McCoy Heath.

Dan R. Bradley, Waverly, Tennessee, for the appellees, Ethel Carmical, Jesse L. McCoy, Howard McCoy, and John J. McCoy.

**OPINION**

Lula McCoy died testate, leaving four tracts of land totaling 500 acres in Perry County. She devised the land 25% each to her then-living children, John McCoy, Mary Jane Kilpatrick, and Ruth McCoy Heath, and the other 25% to be divided equally among her deceased son's three children, Ethel Carmical, Howard McCoy, and Jesse McCoy.

On December 14, 1998, four of the heirs -- Ethel Carmical, Jesse L. McCoy, Howard McCoy, and John J. McCoy (collectively "Petitioners") -- filed the lawsuit below seeking partition and sale of the land. On November 3, 1999, Judge Jeffrey Bivens ordered that the property in question be sold. In that order, Judge Bivens provided that the surveyor, auctioneer, and advertising expenses would be paid from the sales proceeds. The order included no provision for the payment of attorney's fees.

On March 1, 2001, Judge Russell Heldman entered an order stating that the parties had agreed upon a sale date on May 12, 2001. As provided in the order, the property sold on May 12, 2001. On May 14, 2001, attorney Tommy E. Doyle ("Doyle"), on behalf of his client Defendant/Appellee Ruth McCoy Heath ("Heath"), filed a motion to confirm the sale and to approve attorney's fees. On May 30, 2001, Doyle filed a statement in support of his fee request, reflecting that he had spent 91.40 hours on the partition suit. On June 28, 2001, Doyle submitted an affidavit supporting his fee request.

On July 12, 2001, Judge Heldman set the case for hearing on July 19, 2001, in order to "determine all remaining disputed issues, including issues pertaining to fees and to what remaining orders are appropriate for entry." On July 23, 2001, the hearing was reset for August 20, 2001. Also on that date, however, the trial court entered its order confirming the sale and approving attorney's fees and expenses. The order recited that the trial court had conducted a hearing on May 30, 2001, and that its decision was based "on the pleadings and the proof and the statements made in this cause and from the record as a whole." In that order, the attorney's fees were set at 10% from the proceeds of the sale of the decedent's property, or $104,124.

Within one week after the July 23, 2001 order was entered, Defendant/Appellant Mary Jane Kilpatrick ("Kilpatrick") fired her attorney, Donald W. Schwendimann ("Schwendimann"). On July 30, 2001, Kilpatrick filed a *pro se* motion to continue the August 20, 2001 hearing for thirty (30) days so that she could retain another attorney.

On August 20, 2001, the trial court entered an order "*nunc pro tunc*" to be effective on May 30, 2001, which stated that the trial court approved the sale of the property and the 10% award of attorney's fees. The order further provided that the attorney's fee was "to be allocated among the three attorneys, Don Schwendimann, Dan Bradley, and Tommy E. Doyle, according to the time expended and the type of work, to be determined by the Court after consideration of sworn affidavits of time and expenses expended by the respective attorneys . . . ."

On August 29, 2001, Kilpatrick's new attorney filed his notice of appearance. On that same date, the newly retained counsel filed, on Kilpatrick's behalf, a "Motion to be Heard on the Reasonableness of the Attorney's Fee," and a "Motion to Rehear" the decision regarding the setting of attorney's fees.[1]

On September 17, 2001, the trial court entered an order on Kilpatrick's motion to set aside attorney's fees and for a continuance, stating that the attorney fee award previously approved by the court on July 23, 2001, should be divided equally between the three attorneys in the case, Doyle, Schwendimann, and Dan R. Bradley ("Bradley"). The trial court also permitted Schwendimann to withdraw, but noted his lien for the one-third share in the attorney's fees. Finally, the trial court denied Kilpatrick's request for a continuance. Another order was issued on September 17, 2001, stating that it would stay the other September 17, 2001 order, noted above, pending any motion to reconsider, alter, or amend pursuant to Tennessee Rule of Civil Procedure 59, "if the same is timely filed."

On October 16, 2001, Doyle filed a Rule 59 motion to alter or amend the September 17, 2001 order to the extent that it divided the attorney's fees equally between counsel. He submitted his affidavit to the trial court noting that he had practiced law for approximately twenty-nine years and had handled numerous partition suits. He stated that "[i]t has been the practice of the Court to approve a ten (10) percent fee in a typical partition suit and more in complicated and time consuming partition suits." Doyle asserted that he had done 70% of the legal work in the instant partition action and therefore deserved that same share of the fees awarded. In addition, Doyle submitted the affidavit of attorney Billy Townsend ("Townsend"), who stated that he had been practicing real estate law for thirty-four (34) years. He opined that "[t]he traditional attorney fee allowed in partition lawsuits in this circuit has been 10% of the sales price; although, in complex proceedings, the Courts have allowed greater amounts." Townsend said that he had reviewed the file, and was of the opinion that Doyle had done 70% of the legal work on the partition action in this case, and should receive that proportion of the fees awarded. Doyle's motion was set for hearing on November 26, 2001.

On November 26, 2001, Kilpatrick filed an *untimely* Rule 59 motion to alter or amend the judgment. She submitted her own affidavit in support of her motion.[2] In her affidavit, Kilpatrick asserted that her oral fee arrangement with Schwendimann was based on an hourly rate of $100 per hour, and that Schwendimann never indicated to her that their arrangement would change when the decedent's estate was closed. She claimed in her affidavit that the net result of the arrangement

---

[1] After those motions were filed, the attorneys for the other parties both filed motions requesting that Kilpatrick be ordered to pay all future attorney's fees and costs on behalf of all the parties in the lawsuit. In addition, Doyle filed, on behalf of Heath, filed a motion to hold Kilpatrick in contempt for refusing to close the real estate transaction and for contacting other purchasers and encouraging them not to close. Those motions were denied.

[2] Though it is asserted that the motion was hand-delivered to opposing counsel on October 15, 2001, there is no explanation in the record for the reason that the motion was untimely filed.

approved by the trial court would effectively be an hourly rate to Schwendimann of $365 per hour.[3] Kilpatrick asserted that, had she known in the beginning that Schwendimann would be paid that much money, she would have retained other counsel or foregone counsel entirely. Because the fees awarded were "clearly excessive," she asserted, the trial court should reconsider and amend the 10% fee award.

On December 7, 2001, Schwendimann, individually, and Bradley, on behalf of his clients, moved to strike Kilpatrick's Rule 59 motion as untimely. The motion was accompanied by Schwendimann's affidavit, in which he stated that he "distinctly remember[ed] telling Mrs. Kilpatrick that in a partition suit the Court would award a fee based on a percentage of the sale proceeds," and that Kilpatrick understood that to be the case.[4] On December 12, 2001, Kilpatrick moved to strike Schwendimann's motion and affidavit because he was not a party to the lawsuit. Also on that date, Kilpatrick filed a motion to set for a hearing her motion to alter or amend the attorney's fees award.

On December 18, 2001, Judge Heldman denied Kilpatrick's Rule 59 motion as untimely. In addition, he vacated that portion of the September 17, 2001 order that required the 10% attorney's fee to be divided equally, and set the issue regarding the appropriate distribution of the 10% fee for a hearing on February 4, 2002. On February 1, 2002, Schwendimann filed a motion to intervene in order to assert his right to the one-third portion of the attorney's fees previously awarded to him.

On February 4, 2002, Judge Easter conducted a hearing in accordance with Judge Heldman's December 18, 2001 order. The only issue addressed at the hearing was Doyle's Rule 59 motion to alter or amend in which he asserted that he was entitled to 70% of the attorney's fees awarded. On February 8, 2002, Judge Easter entered an order making the following findings:

1. That the Order entered by Chancellor Heldman on July 23, 2001, ordering and decreeing that the attorney's fees and expenses will be ten percent (10%) of the purchase price in the amount of $104,123.93 . . . is a reasonable fee given the complex and complicated nature of this partition suit. The suit is further complicated in that it involves four separate tracts of land and covering over 500 acres of Perry County;

---

[3]Kilpatrick calculated that rate by dividing the fee award ($104,124) by three, because Schwendimann was initially awarded one third, and then divided that amount by 95, which were the hours he claimed he worked on the partition action ($34,708/ 95 hours).

[4]Schwendimann was initially retained by Kilpatrick in 1998 to represent her in a dispute regarding money that Kilpatrick took from her mother's bank account after her death. Schwendimann explained in his affidavit that Kilpatrick certainly understood that, although he charged an hourly rate for the "bank account case," he would get paid out of the sale proceeds for his involvement in the partition action. He said that her understanding was illustrated by the fact that, when she met with Schwendimann, Kilpatrick would ensure that he was not "running the clock," i.e. billing her the regular hourly rate, for their time spent discussing matters pertaining to the partition.

2.  That the ten percent (10%) fee ordered by Chancellor Heldman is not excessive, within the fees for legal services standard set forth at S.Ct. R. 8, DR 2-106(B). The record supports that a lawyer of ordinary prudence would not be left with a definite and firm conviction that this fee is in excess of a reasonable fee. This Court has considered the factors set forth at DR 2-106(B) as a guide in determining the reasonableness of this fee and concludes that factors (1), (3), (4), (5) and (7) are supported by the record;

\*   \*   \*

9.  That after reviewing the entries made on each of the attorney's statement of time and estimated statement of time, it is clear that Attorney Doyle dispensed more time, labor and involvement in this matter than Attorneys Bradley and Schwendimann;

10.  That T.C.A. §9-27-121 permits this Court, in its discretion, to order the fees of the attorneys for the complainant and defendant to be paid out of the common fund, where the property is sold for partition, and taxed as costs in cases where the property is partitioned in kind.

The court then ordered that Doyle was entitled to 50% of the attorney's fees, and that Schwendimann and Bradley would split equally the remaining 50%. Thus, the trial court held that the total amount of attorney's fees awarded — 10% of the purchase price ($104,124) — was not excessive, was consistent with the Supreme Court disciplinary guidelines, and was supported in the record, and that Doyle was entitled to half of those fees. Kilpatrick now appeals that order.[5]

On appeal, Kilpatrick does not challenge the trial court's apportionment of the fees among Schwendimann, Doyle, and Bradley. Rather, she challenges the trial court's total award of 10% of the purchase price of the sale of the land, $104,124, as being excessive under the circumstances. She argues that the trial court's adherence to the local custom of awarding attorney's fees on a contingency basis should not have been followed in this instance. Setting 10% of the sales price as being a reasonable fee, she claims, "begged the question" as it related to the determination of a reasonable fee. Kilpatrick argues that the trial court should have scrutinized the services rendered by each attorney and should have compensated them on a *quantum meruit* basis. Appellee Heath argues that the appellate court cannot adequately review the trial court's decision regarding the award of fees because Kilpatrick filed neither a transcript of the relevant proceedings nor a statement of the

---

[5]On June 12, 2002, Heath filed a motion to dismiss Kilpatrick's appeal because of her failure to file with this Court a transcript of the proceedings below or a statement of the evidence. On June 26, 2002, this Court denied that motion. On July 2, 2002, Heath filed a motion to rehear, which was denied on July 9, 2002.

evidence in accordance with Rule 24(c) of the Tennessee Rules of Appellate Procedure.[6] Heath also contends that Kilpatrick should be precluded from challenging the fee award at this juncture because her Rule 59 motion to alter or amend was untimely filed. Assuming, however, that Kilpatrick is not procedurally barred from raising this issue, Heath maintains that the trial court's total award of fees in the amount of 10% of the purchase price of the land was proper.[7] She argues that there is sufficient evidence in the technical record to support the trial court's ruling, and that the trial court was not restricted to basing attorney's fees on a strict *quantum meruit* determination.

Because this court has appellate jurisdiction only, "our review power is limited to those factual and legal issues for which an adequate legal record has been preserved." *Trusty v. Robinson*, No. M2000-01590-COA-R3-CV, 2001 WL 96043, at *1 (Tenn. Ct. App. Feb. 6, 2001). Therefore, if our review of a particular issue depends on review of proceedings below that are not included in the records filed with this court, the issue cannot be considered on appeal. *Id.* at *4.

Generally, the award of attorney's fees is largely in the discretion of the trial judge, and the trial court's determination will not be disturbed unless the evidence preponderates to the contrary. *Barnhill v. Barnhill*, 826 S.W.2d 443, 456 (Tenn. Ct. App. 1991); *Chaille v. Warren*, 689 S.W.2d 173, 179 (Tenn. Ct. App. 1985). Under Tennessee Code Annotated § 29-27-121, in a partition action, the trial court, in its discretion, may order the attorney's fees to be paid out of the common fund.[8] If it is determined that the fees will be paid out of the common fund, the trial court then must fix an amount of fees for the attorneys of the parties in accordance with the principles generally applied in the determination of reasonable attorney's fees. *Montgomery v. Hoskins*, 432 S.W.2d

---

[6]That Rule provides in pertinent part:

> If no stenographic report, substantially verbatim recital or transcript of the evidence or proceedings is available, the appellant shall prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection. The statement should convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal.

Tenn. R. App. P. 24(c).

[7]The other appellees, Ethel Carmical, Jesse L. McCoy, Howard McCoy, and John J. McCoy filed a brief in this matter adopting the arguments made by Heath. Therefore, any conclusions we reach in this appeal with respect to Heath applies equally to the other appellees.

[8]That statute provides:

> The court may, in its discretion, order the fees of the attorneys for the complainant and defendant to be paid out of the common fund, where the property is sold for partition, and taxed as cost in cases where the property is partitioned in kind.

Tenn. Code Ann. § 29-27-121 (2000).

654, 655 (Tenn. 1968).[9] The appropriate factors to be used as a guide in fixing a reasonable attorney's fee are substantially those listed in Supreme Court Rule 38, Code of Professional Responsibility D.R. 2-106. *See Connors v. Connors*, 594 S.W.2d 672, 676-77 (Tenn. 1980). The reasonableness of an award depends on the facts of each case. *Fell v. Rambo*, 36 S.W.3d 837, 853 (Tenn. Ct. App. 2000).

In this case, the July 23, 2001 order is the order in which the trial court first stated that the total attorney's fee award would be an amount equal to 10% of the proceeds of the sale. In this order, the trial court did not specify the factors on which it relied in making that decision, other than a general overall comment that its ruling was based "on the pleadings and the proof and the statements made in this cause and from the record as a whole." Later, in its February 4, 2002 order, the trial court reaffirmed its earlier order, finding that the 10% fee was "reasonable given the complex and complicated nature of this partition suit." In that order the trial court further stated that "the ten percent (10%) fee ordered by Chancellor Heldman is not excessive, within the fees for legal services standard set forth at S. Ct. R. 8, DR 2-106(B)." The trial court specified that, using

---

[9]The disciplinary rule provides:

**DR 2-106. Fees for Legal Services.**

(A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.

(B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:

> (1)   The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

> (2)   The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

> (3)  The fee customarily charged in the locality for similar legal services.

> (4)   The amount involved and the results obtained.

> (5) The time limitations imposed by the client or by the circumstances.

> (6)   The nature and length of the professional relationship with the client.

> (7)   The experience, reputation, and ability of the lawyer or lawyers performing the services.

> (8)   Whether the fee is fixed or contingent.

Tenn. Sup. Ct. R. 8, DR 2-106.

Tennessee Supreme Court Rule 8, DR 2-106(B) as a guide to determine the reasonableness of the fee awarded, factors (1), (3), (4), (5), and (7) were supported by the record.

The factors in D.R.2-106 enumerated by the trial court in its February 4 order as "supported by the record" pertained to the time, labor, and skill required to perform the legal service and the novelty and difficulty of the issues involved (factor (1)), the fee customarily charged in the locality for similar services (factor (3)), the amount involved and the results obtained (factor (4)), the time limitations imposed by the client or the circumstances (factor (5)), and the experience, reputation, and ability of the lawyers (factor (7)). In order to review whether the evidence preponderated against the trial court's conclusion that those factors were supported in the record, it is necessary to review the evidence on which the trial court relied in reaching its decision. This would, of course, include the evidence presented to the trial court at the hearings on this issue, as well as objections made at those hearings, and the trial court's overall exercise of its discretion in the matter. As indicated above, however, Kilpatrick submitted neither a transcript of the proceedings below nor an approved statement of the evidence pursuant to Rule 24(c) of the Tennessee Rules of Appellate Procedure. Under the circumstances, where review of the transcript or a statement of the evidence is necessary to our review, "we have no alternative" but to affirm the trial court's decision on this issue. *Trusty,* 2001 WL 96043, at \*4 (finding that, in the absence of a transcript or a statement of the evidence, the court must affirm the trial court's conclusion when alleged errors are not reflected in the technical record); *Sherrod v. Wix*, 849 S.W.2d 780, 783 (Tenn. Ct. App. 1992) (stating that, without an appellate record containing the facts, this court must assume that the record, had it been preserved, would have supported the trial court's factual findings).

The record before us indicates that trial court gave due consideration to the applicable disciplinary rules and related case law in reaching its conclusion. Thus, without a complete record of the evidence we must assume that the trial court did not abuse its discretion in applying the applicable law to the evidence before it. Our holding pretermits any other issues raised in this appeal.

The decision of the trial is affirmed. Costs are to be assessed to the appellant, Mary Jane Kilpatrick, and her surety, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE