EMILY WAHLQUIST

*v.*

STATE OF TENNESSEE.

378 S. W. 2d 742

(*Jackson,* April Term, 1964.)

Opinion filed May 8, 1964.

LOUIS E. EUBANKS, Memphis, for plaintiff in error.

GEORGE F. McCANLESS, Attorney General, THOMAS E. Fox, Assistant Attorney General, for the State.

MR. JUSTICE FELTS delivered the opinion of the Court.

This was a contempt proceeding against Emily Wahlquist before the Criminal Court of Shelby County, Honorable Sam D. Campbell, Judge, for disobeying a subpoena to testify. Upon a hearing, she was found guilty of contempt, fined $50.00, and sentenced to three days in jail. She appealed in error and insists that she should not have been held in contempt for her nonattendance, but should have been excused because of her mental condition; and that, in any event, the punishment imposed is excessive.

There is no dispute as to the facts. Plaintiff in error was an employee of William K. Moody, and was a material witness to a beating by him of another person, which resulted in his being indicted upon a charge of assault and battery. The case of *State v. William K. Moody* was set for trial in the Criminal Court presided

over by Judge Campbell. Plaintiff in error was told by a court officer by telephone that he had a subpoena for her to appear and testify as a witness for the State in that case on the date set.

She did not attend court that day, and the case of *State v. Moody* was reset for trial on April 11, 1963. Another subpoena was issued for her to appear on that date to testify in that case as a witness for the State. A court officer went to her home in Memphis and personally served the subpoena upon her some four or five days before the date fixed for the trial. She did not appear in court on that day, but left the State and went to Arkansas.

On April 11, after it appeared she had disobeyed the subpoena, a writ of attachment was issued to arrest her and bring her before the court to show cause why she should not be held in contempt of court for willful disobedience of its process. The officer, however, was unable to find her, though he continued to look for her for several months. Finally, about the 20th of July, 1963, her attorney brought her into court and surrendered her to its custody; and a hearing was had, with the result above stated.

The defense urged for her is that she was in such a mental condition that she feared it might not be safe for her to testify in the Moody case. In this contempt case, she testified that she was suffering from mental disturbances and under treatment of a psychiatrist, Dr. Kenneth Carpenter; that he told her he thought she could not stand the strain of a court appearance, that it might make her "go to pieces," and "put me back in the hospital"; and that "he said he would write a

letter and that that would be all right''; and that she thought ''if I had a letter from the doctor that it would be all right.''

Dr. Carpenter testified that he had been treating her for several months; that she functioned very well when she was not under pressure, but would go to pieces under pressure; that she had been upset and mixed up and (he said): ''I treated her weekly until the day of her disappearance.'' He also said that he had seen her after she had come back to this State and that she told him some of the places where she had been. The Court asked him:

''Q. *Did you advise her at any time not to come here as a witness?*

''A. *No.*

''Q. Was there any reason why she couldn't come up here as a witness?

''A. Yes, I felt that she was a person who functioned very well when there was very little pressure. When the pressure builds up, she begins to go to pieces. I felt when I saw her that she was getting upset and anxious. I felt that her testimony in open court would be inadvisable. That was the basis of my letter to the Court'' (italics ours).

What letter he referred to was not shown; and if he wrote such a letter, neither it nor a copy was produced, nor was the non-production explained. If plaintiff in error's condition was such that it might be unsafe for her to testify, the proper course would have been for her doctor to have made a certificate to that effect, so that

it might have been presented to the Trial Judge and the witness excused.

The fact that no such certificate was presented, and the fact that after being served with the subpoena, plaintiff in error absconded from the State and remained away for several months; and the further fact that though she was at the time represented by counsel, no effort was made to advise the Court of any condition that might excuse her from obeying the writ, are circumstances supporting the finding that she willfully disobeyed the subpoena, and was in contempt of Court.

■ The Trial Judge saw and heard the witnesses and observed their demeanor and was in better position than we are to appraise their testimony, and his findings are, therefore, entitled to great weight in this Court. *Folk v. Folk,* 210 Tenn. 367, 355 S.W.2d 634, 357 S.W.2d 828.

■ We find no merit in the contention that the punishment imposed is excessive. It is well within the limits fixed by the statute (T.C.A. secs. 23-902—23-903), and within the sound discretion of the Trial Judge.

All of the assignments of error are overruled and the judgment is affirmed. The cause will be remanded to Division Two of the Criminal Court of Shelby County for further proceedings not inconsistent with this opinion.